IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| ROBERT S., | Civil No. 25-00417 MWJS-WRP |
| Plaintiff, | ORDER REVERSING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS |
| vs. | |
| FRANK BISIGNANO, Commissioner of Social Security Administration, | |
| Defendant. | |

**INTRODUCTION**

At a hearing before an Administrative Law Judge (ALJ) on an application for Social Security disability benefits, Plaintiff Robert S.[1] testified that he could not work full-time because of severe pain.  To be sure, he was holding a part-time position at a convenience store to make ends meet.  But he explained that he would return home at the end of a workday feeling "[b]roken."  Dkt. No. 14-1, at PageID.92.  And while even this part-time work "exceed[ed]" what he was "able to do," he would force his body to continue doing it because "homelessness is not an option so I make it happen just because I need to, I just need to do it."  *Id.* at PageID.95.

---

[1]     For reasons explained in *Sergio D.L.S. v. Warden, Cal. City Corr. Ctr.*, No. 1:26-cv-02821-MWJS, 2026 WL 1049713, at *1 n.1 (E.D. Cal. Apr. 17, 2026), only Plaintiff's first name and the initials of his last name are used in this order.

There is no question that, if Plaintiff's symptom testimony had been credited, he would have qualified as disabled and been entitled to benefits.  But following the hearing, the ALJ found Plaintiff's testimony not credible.  So Plaintiff now appeals that decision and the denial of Social Security benefits that flowed from it.

An ALJ is, of course, free to find that a claimant's symptom testimony lacks credibility; there is no obligation to take a claimant's word that they are suffering from symptoms that render them unable to work full time.  But given the importance of the issues at stake—the importance of not denying disability benefits that truly are needed—the Ninth Circuit requires that an ALJ reject a claimant's symptom testimony only if they first identify "specific, clear and convincing reasons for doing so."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492-93 (9th Cir. 2015) (cleaned up).

The ALJ did not offer those reasons here.  Accordingly, the decision denying benefits is REVERSED and the matter is REMANDED for further administrative proceedings.

### BACKGROUND

Plaintiff, who is now 60 years old, had consistently held full-time work throughout his adult life.  And after working as a resident manager for over a decade, he began a new job as a sales associate in 2018.  Dkt. No. 14-1, at PageID.77, 79 (Administrative Record (AR) at 43, 45).  But "right out of the gate" at his new job, he had to be taken to the emergency room because of what he described as a "porphyria

attack."  *Id.* at PageID.79 (AR at 45).[2]  He could not hold on to the position and ultimately was terminated in May 2021.  *Id.* at PageID.80 (AR at 46).

Because he and his partner could not survive financially without him working, he tried to work in sales at a plant nursery and landscaping business, but he could not physically perform the work.  *Id.* at PageID.54 (AR at 20).  He next secured a job at a 7-11 convenience store.  Plaintiff began to work there four days—or 32 hours—a week, but as he explained, "the more I do the more my body starts to break down and it's beginning again."  *Id.* at PageID.93 (AR at 59).  He has been in so much pain during the workday that he sometimes has to "put two crates together, milk crates, and sit on them," since there is no other place for him to rest.  *Id.*  Because of his problems with balance, he "fell once doing that."  *Id.*  But while the pain he feels is "intense," he explained that he does not "really have a choice except to push through."  *Id.*; *see also id.* at PageID.95 (AR at 61) ("It exceeds what I'm able to do, but to be honest homelessness is not an option so I make it happen just because I need to, I just need to do it.").

Plaintiff eventually saw one other possible option:  an application for Social Security disability benefits.  An individual generally may only secure these benefits if they have a sufficient history of employment.  And Plaintiff's "earnings record shows that he has acquired sufficient quarters of coverage."  Dkt. No. 14-1, at PageID.52.  So he

---

[2]     Plaintiff notes that "acute intermittent porphyria" or "AIP"—which he contends is his diagnosis—is a rare disorder that can cause "major problems, mainly in the nervous system and skin."  Dkt. No. 21, at PageID.1292.

applied for disability benefits in July 2022, alleging disability beginning May 1, 2021,

and the case came before an ALJ for a hearing in August 2024.

The Social Security regulations require ALJs to follow "a five-step sequential

process for determining whether an applicant is disabled within the meaning of the

Social Security Act."  *Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir.

2011).  The steps are:

> (1) Is the claimant presently working in a substantially gainful activity?  (2) Is the claimant's impairment severe?  (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations?  (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25 (citing 20 C.F.R. § 404.1520).

Following the hearing, the ALJ worked through these steps.  At step one, the ALJ

found that, despite Plaintiff's attempt to work at the plant nursery and his part-time

work at the 7-11 convenience store, he has not engaged in "substantial gainful activity

since May 1, 2021."  Dkt. No. 14-1, at PageID.53.  At step two, the ALJ agreed that

Plaintiff's impairments—which the ALJ identified as "obesity, and chronic pain

syndrome/erythropoietic protoporphyria"—are severe, in that they "significantly limit"

Plaintiff's "ability to perform basic work activities."  *Id.* at PageID.54 (AR at 20).  The

ALJ also found that Plaintiff suffers from additional impairments that, while "medically

determinable," do not qualify as "severe."  *Id.*  At step three, the ALJ found that

Plaintiff's impairment did not meet or equal an impairment listed in the regulations,

meaning that the ALJ could not grant Plaintiff's application automatically without considering what he is actually able to do.  And so in anticipation of answering the questions at steps four and five, the ALJ assessed Plaintiff's "residual functional capacity," or "RFC," which is a measure of "the most [one] can still do despite [one's] limitations."  *Ferguson v. O'Malley*, 95 F.4th 1194, 1198 (9th Cir. 2024) (quoting 20 C.F.R. § 416.945(a)(1)).

This is where Plaintiff's hearing testimony took on significance.  The ALJ found that Plaintiff's "medically determinable impairments *could* reasonably be expected to cause symptoms which more than minimally affected the ability to perform work-related activity."  *Id.* at PageID.59 (AR at 25) (emphasis added).  And the ALJ found no evidence that Plaintiff was feigning his illness or malingering.  But the ALJ concluded that the "alleged degree of intensity, persistence and limiting effects testified to and reported by the claimant as the pain and other symptoms are not consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  *Id.*  Having rejected Plaintiff's symptom testimony, the ALJ concluded, at step four, that Plaintiff could perform past work as a retail sales clerk.  *Id.* at PageID.62 (AR at 28).  Accordingly, Plaintiff did not qualify as disabled and was not entitled to benefits.  And given that determination, the ALJ had no occasion to consider whether Plaintiff might also be able to perform work other than past work (the step five question).

What were the "reasons explained in this decision" that supported rejecting Plaintiff's symptom testimony?  The ALJ offered four:

First, the ALJ pointed to notes in six different medical records.  The ALJ observed that in two of these, Plaintiff's "erythropoietic protoporphyria was noted to be stable with chronic pain control" and "only pain management was recommended."  *Id.* at PageID.59 (AR at 25).  One other from August 2022 noted that Plaintiff "had steady gait and ambulated independently."  *Id.*  And three others "indicated that the claimant was not in acute distress."  *Id.*

Second, the ALJ noted that Plaintiff was "referred for a consultation at the University of California San Francisco's Porphyria Center," but that "there is no evidence of such a consultation let alone treatment from experts."  *Id.*

Third, the ALJ pointed to the fact that "progress notes in 2023 indicated that the claimant lived in an apartment with 20 steps," which in the ALJ's view, "indicates the ability to climb ramps and stairs, inconsistent with his complaints of pain."  *Id.*

Fourth, and finally, although Plaintiff had "reported being bed-ridden or physically incapacitated when having episodes from 2017–2021," he nonetheless was "able to engage in substantial gainful activity during that time, which is suggests [stet] fewer limitations than alleged and not consistent with the degree of impairment alleged."  *Id.* at PageID.59–60 (AR at 25–26).

Plaintiff asked the Social Security Administration's Appeals Council to review the ALJ's decision, but that request was denied, *id.* at PageID.35–40 (AR at 1–6), making the ALJ's decision the Commissioner's final decision. Plaintiff then brought this timely appeal.

## DISCUSSION

### A. Standards of Review

The Commissioner's disability determination must be reversed when "it is either not supported by substantial evidence or is based upon legal error." *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). This standard is deferential, requiring "only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) (cleaned up). "But it is not toothless." *Loniza v. King*, Civ. No. 23-00352, 2025 WL 435943, at *3 (D. Haw. Feb. 7, 2025).

And its teeth are sharper than usual when an ALJ has based a denial on a rejection of a claimant's symptom testimony. Granted, the record might reveal that a claimant is malingering, or feigning illness. Or it might not be medically possible for a claimant's impairments to produce the pain or symptoms alleged. But when neither of those circumstances is present, the Ninth Circuit requires an ALJ to meet a demanding standard before concluding that a claimant's symptom testimony lacks credibility: the

ALJ must offer "specific, clear and convincing reasons for doing so." *Brown-Hunter*, 806 F.3d at 492-93 (cleaned up); *see also Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007).

Under this standard, it is not enough for an ALJ to merely hint at her reasons for rejecting a claimant's symptom testimony. While a reviewing court "will not fault the agency merely for explaining its decisions with less than ideal clarity," it still must "demand that the agency set forth the reasoning behind its decisions in a way that allows for meaningful review." *Brown-Hunter*, 806 F.3d at 492 (cleaned up). Indeed, a "clear statement of the agency's reasoning is necessary because we can affirm the agency's decision to deny benefits only on the grounds invoked by the agency." *Id.* "[L]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009).

To qualify as an adequately "clear statement" rejecting a claimant's symptom testimony, the ALJ's finding "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter*, 806 F.3d at 493. Put differently, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (cleaned up).

**B.    The ALJ Did Not Offer Specific, Clear and Convincing Reasons to Reject Plaintiff's Symptom Testimony**

In this appeal, Plaintiff contends that the ALJ failed to satisfy the Ninth Circuit's demanding standard before rejecting his symptom testimony.  As a threshold matter, there is no dispute that the ALJ was required to provide "specific, clear and convincing reasons for doing so."  *Brown-Hunter*, 806 F.3d at 492-93 (cleaned up).  The ALJ did not suggest that Plaintiff was malingering.  And the ALJ acknowledged that Plaintiff's severe impairments *could* have produced the symptoms and pain alleged.  So the only question is whether the ALJ's offered reasons were enough.

1.  The ALJ's first offered reason was that medical records contradicted Plaintiff's symptom testimony.  It is true that "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008).  But the ALJ here did not explain why the six medical records on which she relied in any way contradicted Plaintiff's testimony.

Recall that Plaintiff did not testify that he is invariably in pain; his testimony was that "the more I do the more my body starts to break down."  Dkt. No. 14-1, at PageID.93 (AR at 59).  For a medical record to contradict this testimony, then, it would need to show either that Plaintiff is never in pain, or alternatively that he is in pain for less often—or to a much lesser degree—than he represented.  Now consider the medical records on which the ALJ relied.  They record occasions when Plaintiff was in stable

9

condition, had steady gait, ambulated independently, and was not in acute distress.  But none of the medical records suggest this was *always* or even *frequently* the case.  Nor did the ALJ explain why it would be appropriate to infer from these medical records that Plaintiff always or frequently is in stable condition and free of pain—or in less serious pain than he alleged in his testimony.

In short, Plaintiff's testimony and these medical records can perfectly co-exist; Plaintiff sometimes suffers from debilitating pain, but sometimes is pain-free.  And while the records "do not offer any obvious *support*" for Plaintiff's testimony, "the ALJ offered no explanation for why they would *contradict*" his testimony.  *Kapoi v. Bisignano*, Civ. No. 25-00363, 2026 WL 523795, at *4 (D. Haw. Feb. 25, 2026).  Six sightings of the moon would not contradict a person's testimony that the sun also rises.  At a minimum, the ALJ failed to offer any reason why six medical records suggesting that Plaintiff was doing well would contradict his testimony that he often is not.[3]  And a reviewing court cannot supply the reasons the ALJ did not herself give.

---

[3]     Plaintiff makes the separate argument that the ALJ fundamentally misread these medical records, because while she relied on the report that Plaintiff's "erythropoietic protoporphyria" was stable, Plaintiff's actual diagnosis is for something different:  acute intermittent porphyria.  Dkt. No. 21, at PageID.1292.  And, Plaintiff argues, the medical records do not support the conclusion that his actual condition was stable.  *Id.* at PageID.1300–01.  Because the ALJ's reliance on this record was inadequate for other reasons, the court need not resolve whether Plaintiff has correctly identified this as an additional inadequacy.

One final aspect of the ALJ's treatment of medical records requires discussion. While describing the six reports, the ALJ also noted that in one of them, "only pain management was recommended."  Dkt. No. 14-1, at PageID.59 (AR at 25).  This could, perhaps, be viewed as a suggestion that Plaintiff's symptoms are not as severe as alleged because medical providers have only recommended conservative treatment—or because Plaintiff has declined to pursue more aggressive treatment.  And the Ninth Circuit has recognized that "evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of an impairment."  *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *accord Jaco v. Dudek*, Civil No. 24-00472 MWJS-KJM, 2025 WL 1144764, at *7 (D. Haw. Apr. 18, 2025) ("[I]f more aggressive treatment is available and the claimant declines it, that can be evidence supporting the conclusion that the symptoms are milder than the claimant says they are.").

But "[n]othing in *Parra* suggests that an ALJ can characterize a course of treatment as conservative when the evidence in the record—or, at a minimum, inferences fairly drawn from the record—do not reflect that a more aggressive treatment option was available."  *Loniza*, 2025 WL 435943, at *6.  That is to say, a "'claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist.'"  *Id.* at *5 (quoting *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010)).  And in this case, Plaintiff's testimony was that he has spoken with his doctors, but they have said "[t]here's really nothing more that they can do for me."

Dkt. No. 14-1, at PageID.96 (AR at 62).  Lacking any evidence in the record that more

aggressive treatment options were appropriate for Plaintiff, the ALJ could not discount

his testimony on the grounds that his treatment was conservative.

For these reasons, the ALJ's reliance on medical records was not a "specific, clear

and convincing" reason for rejecting Plaintiff's symptom testimony.  *Brown-Hunter*, 806

F.3d at 492-93 (cleaned up).

2.  The ALJ's second offered reason—though not clearly fleshed out—appears to

be a suggestion that Plaintiff did not show enough interest in pursuing treatment

options available to him.  In particular, the ALJ pointed to the fact that Plaintiff was

"referred for a consultation at the University of California San Francisco's Porphyria

Center," but that "there is no evidence of such a consultation let alone treatment from

experts."  Dkt. No. 14-1, at PageID.59 (AR at 25).  This reason is similar to the argument

based on conservative treatment; the suggestion appears to be that if Plaintiff truly were

in as much pain as he reports, he would have shown more interest in pursuing this

opportunity for consultation.

The problem here is that nothing in the record suggests that Plaintiff was in any

way at fault for the (apparent) fact that no consultation at the Porphyria Center took

place.  The ALJ merely pointed to a record showing that Plaintiff was referred for

consultation.  What the ALJ did not identify was any evidence showing Plaintiff was

*accepted* for a consultation, or otherwise actually had the opportunity to do a

12

consultation.  And if he was never actually offered a consultation, it cannot be fairly inferred that he would have turned down the offer had it been made.

Concededly, the record is not fully developed on this point.  But Plaintiff cannot be faulted for that.  The ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered."  *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)). Yet the ALJ asked no questions at the hearing about the Porphyria Center referral or why it did not take place.  Indeed, the ALJ did not even confirm with Plaintiff that it did not take place.  This cannot count as a "specific, clear and convincing" reason for rejecting Plaintiff's symptom testimony.  *Brown-Hunter*, 806 F.3d at 492-93 (cleaned up).

3.  The ALJ's third reason for rejecting Plaintiff's symptom testimony was that in 2023, Plaintiff appears to have been living "in an apartment with 20 steps," which the ALJ viewed as "inconsistent with his complaints of pain."  Dkt. No. 14-1, at PageID.59 (AR at 25).  But once again, the ALJ failed to ask Plaintiff any questions about this living arrangement.  The record is devoid of any evidence showing how Plaintiff manages to make it up and down these steps; whether Plaintiff is (as he has suggested is the case for other activities) in excruciating pain while using the steps (assuming he does regularly use the steps); and whether there are any other living accommodations that Plaintiff could secure.  After all, Plaintiff testified that he has been working at a 7-11 convenience store to make ends meet, despite what he describes as excruciating pain.  He explained

13

that he does this for the understandable reason that "homelessness is not an option." *Id.*
at PageID.97 (AR at 63).  And Plaintiff also explained that because of his pain, he rarely
left his house, except to go to work or the doctor.  *Id.* at PageID.98 (AR at 64).  Given
these facts, it was incumbent on the ALJ to either develop a factual record of whether
Plaintiff "could even afford to move out of the apartment to find one that did not have
stairs," Dkt. No. 21, at PageID.1304, or alternatively to explain why a person's decision
to live with painful stairs instead of become homeless can be taken to discredit their
testimony about the severity of their pain.

By failing to develop the factual circumstances, and offer an adequate
explanation for her engagement with them, the ALJ failed to offer a reasoned analysis of
Plaintiff's living arrangements.  This was insufficient to show that the ALJ "did not
arbitrarily discredit a claimant's testimony regarding pain," *Brown-Hunter*, 806 F.3d at
493, and thus is an insufficient basis on which to affirm.

4.  The ALJ's fourth and final reason was that Plaintiff performed some work
between 2017 and 2021—the time period *before* he reported becoming disabled—and
that this somehow contradicted Plaintiff's report of "being bed-ridden or physically
incapacitated when having episodes from 2017–2021."  Dkt. No. 14-1, at PageID.59–60
(AR at 25–26).  But the ALJ did not explain why an ability to perform some work—
particularly in the time period before the alleged onset of disability—contradicted
Plaintiff's testimony that he had occasions of severe and debilitating pain.  This is not a

14

"specific, clear and convincing" reason for rejecting Plaintiff's symptom testimony. *Brown-Hunter*, 806 F.3d at 492-93 (cleaned up).

In his briefing, the Commissioner makes the further argument that Plaintiff's post-disability work at the 7-11 convenience store also contradicts his symptom testimony. Dkt. No. 22, at PageID.1313–14. That argument does not supply a proper basis for affirming the ALJ's decision. As Plaintiff correctly notes, Dkt. No. 23, at PageID.1329–30, the ALJ did not rely on Plaintiff's work in the post-disability period, let alone address Plaintiff's testimony about the excruciating pain he suffers from while performing that work. And the court can "affirm the agency's decision to deny benefits only on the grounds invoked by the agency." *Brown-Hunter*, 806 F.3d at 492.

## CONCLUSION

For the foregoing reasons, the court concludes that the ALJ—acting on the Commissioner's behalf—did not offer adequate reasons to reject Plaintiff's symptom testimony. Accordingly, the Commissioner's decision denying Plaintiff's application for Social Security disability benefits is REVERSED and the case is REMANDED for further administrative proceedings consistent with this order. Given this ruling, the court declines to resolve Plaintiff's alternative argument for reversal at this time. Dkt. No. 21, at PageID.1305–09. *Accord Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) (remanding for one reason and "declin[ing] to reach [an] alternative ground").

IT IS SO ORDERED.

DATED:  July 14, 2026, at Honolulu, Hawai'i.



/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge

*Robert S. v. Frank Bisignano*; Civil No. 25-00417 MWJS-WRP; ORDER REVERSING
DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING
FOR FURTHER ADMINISTRATIVE PROCEEDINGS